IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JONAS NSONGI MBONGA, | ) | Case No. 4:25-cv-2315 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| KEVIN RAYCRAFT, *et al.,* | ) | |
| | ) | **MEMORANDUM OPINION &** |
| Defendants. | ) | **ORDER** |
| | ) | |

## I.      Introduction

On August 23, 2021, Petitioner Jonas Nsongi Mbonga ("Mbonga") filed a Verified

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF Doc. 1.  Respondents

filed a Traverse (ECF Doc. 6) on October 31, 2025 and Mbonga filed a reply on November 5,

2025.  ECF Doc. 9.  Because Respondents did not follow the required procedures to detain

Petitioner Mbonga, his Petition is GRANTED and he is immediately released from detention.

## II.      Background

Mbonga is a native and citizen of the Democratic Republic of the Congo.  ECF No. 1,

¶ 15; see also Declaration of Aaron Husband ("Husband Decl.") at ¶ 3.  He applied for admission

to the U.S. at the Laredo, Texas port of entry on July 18, 2018.  ECF No. 1, ¶ 15.  On September

17, 2018, Petitioner was placed in removal proceedings, and he filed an Application for Asylum

and Withholding of Removal on January 23, 2019.  *Id.*  On February 1, 2019, the Immigration

Judge reviewing Petitioner's claim for asylum expressed concerns with Mbonga's credibility and

ordered Petitioner removed. *Mbonga v. Garland*, 18 F. 4th 889, 893 (6th Cir. 2021); Attachment

to Husband Decl. at page 3.  On February 28, 2019, Mbonga appealed to the Board of

Immigration Appeals ("BIA" or the "Board") which remanded the case back to the Immigration

Judge.  Attachment to Husband Decl. at page 3.  On November 8, 2019, Petitioner's case was

then heard by a different immigration judge who denied his request for asylum, and ordered

Petitioner removed from the United States.  *Id*.  Petitioner appealed to the BIA again.

During the pendency of his appeal to the Board, Petitioner Mbonga also filed a writ of

habeas corpus in the N.D. of Ohio Federal Court.  *See Amaya-Cruz, et al. v. U.S. Immigration

and Customs Enforcement,* case # 1:20-cv-0789-DAP.  Pursuant to an agreement reached in the

District Court, ICE released Petitioner from custody in December 2021.  *Id*.  *See Settlement

Agreement and Release.*  ECF Doc. 75-1.  The Settlement Agreement expired at the end of 2024.

*Id.*

On November 4, 2020, the Board denied Petitioner relief.  *Id*.  On December 4, 2020,

Petitioner petitioned the Sixth Circuit to review the Board's decision.  *Id*.  "While his appeal

before [the Sixth Circuit] was pending, [Mbonga] filed a motion to reopen immigration

proceedings before the Board in February 2021."  *Mbonga v. Garland*, No. 22-3851, 2023 U.S.

App. LEXIS 27311, at *6 (6th Cir. Oct. 13, 2023).

On November 22, 2021, the Sixth Circuit affirmed the Board's decision.  *Id*.; see also

Attachment to Husband Decl. at page 3.  On September 30, 2022, the BIA denied Petitioner's

motion to reopen.  *Id*.  On October 7, 2022, Petitioner petitioned the Sixth Circuit to review the

BIA's denial of his motion to reopen.  *Id*.  On January 10, 2024, ICE found that Petitioner was

neither a flight risk nor a danger to the community when it released him under an order of

supervision.   Petitioner fully abided by the order's terms, including attending regularly scheduled check-ins with ICE.  ECF Doc. 1, ¶ 4.

On or about April 16, 2025, Petitioner filed another motion with the Board to reopen his proceedings.  ECF No. 1, ¶ 3.  At a regularly scheduled check-in with ICE on August 12, 2025, Respondents suddenly revoked Petitioner's order of supervision and arrested him.  Petitioner was first detained at the Northeast Ohio Correctional Center and was recently transferred to the Mahoning County Jail.  On August 18, 2025, Petitioner filed an Emergency Motion to Stay with the Board pending the BIA's decision on his pending motion to reopen proceedings.  Husband Decl. at ¶ 7.  While the motion to reopen is still pending, the motion for stay was denied on October 24, 2025.  *Id.*; Attachment to Husband Decl. at page 3.

The Embassy of the Democratic Republic of Congo to the United States issued Petitioner a travel document on August 19, 2025, after Mbonga had already been detained.  Husband Decl. at ¶ 8. Petitioner's travel document is valid until February 17, 2026.  *Id.*

On October 28, 2025, Mbonga filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241.  ECF Doc. 1.  ICE was planning on deporting him the same day.  The Court issued a temporary restraining order preventing his immediate deportation, set a briefing schedule and scheduled a hearing for November 6, 2025.  Two witnesses testified at the hearing—Petitioner Mbonga and Ryan Theodore, who was acting as Assistant Field Officer Director on the day Petitioner Mbonga was detained.

### III.    Law & Analysis

The President and immigration officials have the lawful authority to set policy and to enforce the law, and it is not the province of the federal judiciary to second-guess their policy decisions.  We live in a country where the Rule of Law is paramount, and it is the province of the

federal judiciary to ensure that the government obeys the law, particularly when it chooses to deprive someone of their liberty.

In his petition, Mbonga does not challenge the Government's authority to effectuate the final order of removal against him.  However, he contends that Respondents violated their own procedures in detaining him and his detention was unreasonable.  Accordingly, this Court has jurisdiction to consider his habeas petition.  Courts have "distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." *Ceesay v. Kurzdorfer*, 781 F. Supp.3d 137, 2025 U.S. Dist. LEXIS 84258 at * 152 (W.D.N.Y. May 2, 2025); *M.S.L. v. Bostock*, 2025 U.S. Dist. LEXIS 162519 at *9 (D. Ore., August 21, 2025).

Respondents argue that they detained Petitioner Mbonga to ensure that he would be available for deportation, and the parties agree that when evaluating "reasonableness" of detention, one of the tests is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).  However, in Petitioner Mbonga's case, there was no reason to believe he would not self-report for deportation.  He had reported for all his scheduled check-ins, including the August 12th check-in, and he had not violated any conditions of his release.  Given his history and the procedural flaws discussed below, his pre-removal detention was not reasonable.

Depriving someone of their liberty is extremely serious and should only be permitted when necessary and according to prescribed procedure.  Because removal places a great hardship on the individual and deprives him of the right to stay, live and work, "[m]eticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential

4

standards of fairness." *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S. Ct. 1443, 89 L. Ed. 2103 (1945).  Here, Petitioner identified several procedural violations surrounding his detention, which were supported by the evidence from the November 6th hearing.

### A.    Delegation

8 C.F.R. § 241.4(l)(2) authorizes the Executive Associate Commissioner or a District Director to revoke release of an alien.  At the November 6th hearing, Ryan Theodore testified that he was the person who decided to detain Petitioner Mbonga when he reported to the Brooklyn Heights field office on August 12, 2025.  Mr. Theodore believed he had the authority to detain Mr. Mbonga because he was the Acting Assistant Field Officer Director in Brooklyn Heights when Mr. Mbonga was detained.[1]  However, Kevin Raycraft was the acting District Director of for USCIS, not Mr. Theodore.  When questioned about this, Mr. Theodore could not explain how the authority to revoke supervision had been delegated to him.  Nor did Respondents produce any documentation of Mr. Theodore's delegation for August 12, 2025.

Records of delegation are commonly created when government authorities delegate their powers and responsibilities.  For example, when a U.S. Attorney is out of his or her district, the U.S. Attorney formally delegates their authority to another individual.  Similarly, when the Department of Justice applies for wiretap authority, they must submit documentation from the official authorized by the statute or an official delegation signed by that official.  In other words, when official authority is delegated, a record of the delegation must exist.

Here, Mr. Theodore could not adequately explain how Mr. Raycraft's authority had been delegated to him.  Nor did Respondents produce any other formal documentation of the

---

[1] Mr. Theodore was filling in for Ryan Overton who was Acting Assistant Field Officer Director in Brooklyn Heights on August 12, 2025.

delegation.  Accordingly, Respondents did not establish that Mr. Theodore had the authority under 8 C.F.R. § 241.4(c) to decide to detain Petitioner Mbonga on August 12, 2025.

### B.      Travel Documents

When Petitioner Mbonga was detained on August 12, 2025, Respondents did not have travel documents for him to be deported.  The record shows that the travel documents were not obtained until August 19, 2025.  ECF Doc. 6-1 at ¶8.

8 C.F.R. § 241.4(g)(3) provides:

> Availability of travel document. In making a custody determination, the district director and the Director of the HQPDU shall consider the ability to obtain a travel document for the alien. If it is established at any stage of a custody review that, in the judgment of the Service, travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate removal is not practicable or in the public interest.

Here, Mr. Theodore testified that he believed he could obtain the travel documents from the Democratic Republic of the Congo.  However, the same argument—that travel documents *could* be obtained—could be said about anyone in the country subject to an order of removal.  Given Petitioner Mbonga's history of compliance and the fact that the travel documents had not yet been secured, his immediate detention was unnecessary.  Moreover, Respondents did not attempt to remove Mr. Mbonga until October 28, 2025, 77 days after he was detained.  As already stated, depriving someone of their liberty, even for a short period, should only be undertaken when absolutely necessary.

### C.      Providing Order, Informal Interview

Respondents did not follow their own regulations when they detained Petitioner Mbonga on August 12, 2025.

8 C.F.R. § 241.4(l)(1)& (2) provide:

6

(1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

(2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
(i) The purposes of release have been served;
(ii) The alien violates any condition of release;
(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

Respondents argue that 241.4(l)(1) does not apply to Mr. Mbonga because he did not violate the conditions of his release.  However, it does not make sense that someone who does not violate the conditions of their release would be afforded less procedural safeguards than someone who does.  Other courts agree.  *See K.E.O. v. Woosley,* 2025 U.S. Dist. LEXIS 172361 at *13 (W.D. Ky. Sept. 4, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 2025 WL 1284720 (W.D.N.Y. 2025); *Orellana v. Baker*, 2025 U.S. Dist. LEXIS 164986, 2025 WL 2444087 (D. Md. Aug. 25, 2025); *Zongbo Zhu v. Genalo*, 2025 U.S. Dist. LEXIS 166176, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025).

At the November 6, 2025 hearing, Petitioner Mbonga testified that he had not been given a copy of the detention order or notified of the reasons for his revocation of release on August 12, 2025.  Even if he had been given a copy of the order, it did not state any specific reasons why

he was being detained.  The notice states only that the decision to revoke supervision was based on a review of Mr. Mbonga's file and/or his personal interview.  *See* Notice of Revocation, Exhibit 1 from November 6th hearing. This notice or order was defective because it did not provide any specific reason for Mr. Mbonga's detention.  *See M.S.L. v. Bostock,* 2025 U.S. Dist. LEXIS 162519 at *29.  In fact, there was no reason in Mr. Mbonga's file to abruptly revoke his order of supervision on August 12, 2025, and Mr. Mbonga testified that he was not given an informal interview.  Both of these procedures were required by the applicable regulations, but Respondents did not submit any evidence of their compliance.  Ryan Theodore was not even present when Mr. Mbonga was detained, and he was the only witness who testified for Respondents.

## IV.    Conclusion

In the *United States v. Accardi*, the Supreme Court held that when the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." 347 U.S. 260, 266, 268, 74 S. Ct. 499, 98 L. Ed. 681 (1954). Because Respondents failed to follow their own regulations in detaining Mr. Mbonga, his writ for habeas corpus is GRANTED.

Dated: November 7, 2025

*s/Dan Aaron Polster*
United States District Judge